## Case No. 17,387.

### In re WELLS et al.

### Ex parte CLAFLIN et al.

[1 N. B. R. 171;[1] 7 Am. Law Reg. (N. S.) 163; 1 Am. Law T. Rep. Bankr. 20; Bankr. Reg. Supp. 37; 6 Int. Rev. Rec. 181.]

District Court, N. D. New York. 1873.

#### ACTS OF BANKRUPTCY.

Where a trader stops payment of his commercial paper and does not resume payment thereof within fourteen days, he commits an act of bankruptcy.

[Cited in Jersey City Window-Glass Co., Case No. 7,292; Re Ballard, Id. 816; Re Smith, Id. 12,974. Quoted in Baldwin v. Wilder, Id. 806. Cited in Re Hercules Mut.

---

[1] [Reprinted from 1 N. B. R. 71, by permission.]

Life Assur. Soc., Id. 6,402; Globe Ins. Co. v. Cleveland Ins. Co., Id. 5,486.]
[Distinguished in Haas v. O'Brien, 66 N. Y. 602.]

[This was a petition by H. B. Claflin & Co. for an adjudication in bankruptcy against Alfred L. Wells & Son.]

HALL, District Judge. The petition in this case alleges two acts of bankruptcy, namely: First, that on or about the 16th of March, 1867, the said Alfred L. Wells & Son, being possessed of a certain estate and property (to wit: a stock of dry goods and other articles, together with divers accounts against persons to whom they had sold goods, &c.), made an assignment of the whole of them, with intent to delay and hinder their creditors; and, second, that on or about the 16th of March, 1867, being merchants and traders, they fraudulently stopped and suspended, and had not resumed payment of their commercial paper within a period of fourteen days. The petition also shows that at the time above mentioned the firm was insolvent; that judgments had been taken against them; and that suits upon other demands against them had been commenced, and were being prosecuted to judgment and execution.

The execution of a general assignment for the common and equal benefit of all their creditors, is admitted; but it is denied that it was executed with the intent to delay or hinder creditors. As there is no replication to the answer containing this denial, and as the case has been brought to a hearing on the petition and answer, this intent, if it be not conclusively presumed as a matter of law, must be regarded as disproved; and as there is no allegation that the assignment referred to was made with intent to defeat or delay the operation of the bankrupt act, we are not now called upon to decide whether a general assignment making a disposition of the bankrupts' property substantially the same as that contemplated by the bankrupt act [of 1867 (14 Stat. 517)], can be considered an act of bankruptcy if made in good faith before the first day of June last, (and consequently before any petition could be filed under that act,) and for the single purpose of preventing a portion of his creditors from obtaining a preference over his other creditors.

We think there is no conclusive legal presumption that the assignment was made to delay or hinder creditors. It may, perhaps, be truly said it was made with intent to delay and hinder the particular creditors who were striving to obtain a preference over the other creditors of the respondents, by pressing the suits they had already commenced to judgment and execution; but this intent is not such an intent as the bankrupt act contemplates. Such an assignment, under such circumstances and with such intent, would not be held void under the statute of this

state, which avoids conveyances made with the intent to delay, hinder, or defraud creditors; and notwithstanding the provision of the 35th section of the bankrupt act, that a sale, assignment, transfer, or conveyance not made in the usual course of business of the debtor, shall be prima facie evidence of fraud, we are of the opinion that, under the denials contained in the answer in this case, we cannot properly hold that the making of the assignment, under the circumstances stated, was an act of bankruptcy.

Upon the second allegation of an act of bankruptcy, the petitioners are entitled to an adjudication in bankruptcy against the respondents. It is true that the construction of the provision of the bankrupt act on which this allegation is based is not entirely free from doubt, but the construction which justifies such an adjudication has been adopted in another district, and is, as we think, a reasonable and just construction of such provision. It was contended upon the argument that this provision, which authorizes proceedings in invitum against any person, "who being a banker, merchant, or trader, has fraudulently stopped or suspended and not resumed payment of his commercial paper within a period of fourteen days," does not authorize such proceedings unless the original stoppage or suspension of payment was fraudulent—no matter how long such suspension may be continued.

We understand that the United States district court of South Carolina has decided that such is not the true construction of the provision referred to, and that its true construction requires an- adjudication in bankruptcy against a banker, merchant, or trader who "has suspended and not resumed payment of his commercial paper within a period of fourteen days," although such suspension or stoppage of payment was not fraudulent; and this, we think, is the fair and proper construction. The provision embraces the two cases; the one of an original fraudulent stoppage of payment, in which proceedings may be instituted at once; and the other of a suspension of payment not fraudulent, and not per se an act of bankruptcy, but which, if·continued for more than fourteen days, becomes an act of bankruptcy by its continuance. The construction of the language of this particular provision under consideration, is, we think, best calculated to carry out the general intentions of congress, as expressed in the bankrupt act; and such construction, if not strictly required by, is certainly not inconsistent with the language of the particular provision alluded to.

It can hardly be supposed that congress intended that the creditors of a banker, merchant, or trader. who. had fraudulently stopped payment of his commercial paper. should be compelled to allow him fourteen days to consummate his fraudulent purposes. and perhaps secretly remove from the United States with the mass of his property before

they could take proceedings against him. There is certainly no more reason for allowing such delay after a fraudulent act of that character than there is in a case where a bankrupt has fraudulently concealed or transferred a portion of his property. But when the suspension of payment is from necessity and without fraud. the period of fourteen days is properly allowed the honest trader, that he may, in case he is insolvent and is only temporarily embarrassed. take the necessary measures to enable him to pay his dishonored paper, and prevent his business being broken up by proceedings in bankruptcy. The accidental loss or miscarriage of expected remittances; the unexpected failure of a correspondent or of a bank in which his deposits are kept; the failure of his debtors to meet their commercial paper; or any other of the many misfortunes and accidents incident to commercial and financial operations, may compel an entirely solvent and perfectly safe merchant or trader to suspend for a day or two the payment of his commercial paper; but a merchant of fair character, who is solvent and deserving of credit, can, by means of temporary loans or otherwise, provide for resuming payment of his commercial paper within the fourteen days allowed by the bankrupt act. A suspension continued for a longer period may well be considered as evidence of hopeless insolvency or of a want of adequate capacity to carry on his business. and as entitling his creditors to take proceedings to secure the application of his property to the payment of his debts. Between these two classes—between the honest trader who suspends payment by reason of misfortune or accident, and the fraudulent one who stops payment that he may retain and secure his means for the future benefit of himself or family, to the exclusion of his creditors—congress has. we think, very properly made a clear distinction; a distinction which can only be acted upon by adhering to the construction heretofore given to the provision referred to by the only district court which has, within our knowledge, passed upon this question.